**In re PSYCHIATRIC HOSPITALS OF HERNANDO COUNTY, INC., Debtor.**

**Bankruptcy No. 95–2533–8P1.**

United States Bankruptcy Court, M.D. Florida. Tampa Division.

Sept. 16, 1998.

See also 207 B.R. 276.

Domenic L. Massari, III, Caryl E. Delano, Tampa, FL, for Debtor.

Robert A. Soriano, Tampa, FL, Anne Marie P. Kelley, Philadelphia, PA, for creditor, Psychiatric Hospitals of Pennsylvania, Inc.

Mark J. Wolfson, Tampa, FL, for First Union National Bank of Florida.

Sara Kistler, Tampa, FL, Assistant United States Trustee.

**ORDER ON APPLICATION OF PSYCHIATRIC HOSPITALS OF PENNSYLVANIA, INC. FOR ALLOWANCE OF COMPENSATION TO ITS ATTORNEYS UNDER 11 U.S.C. § 503(b)(3) and (4) (DOC # 416) and ORDER ON OBJECTIONS TO APPLICATION (DOC # 422 & # 423A)**

ALEXANDER L. PASKAY, Chief Judge.

The matters under consideration in this confirmed Chapter 11 case are an Application for Allowance of Compensation to its Attorneys, filed by Psychiatric Hospitals of Pennsylvania Inc., doing business as Eugenia Hospital (Eugenia), and Objections to the Application filed by First Union National Bank of Florida (Bank) and by Psychiatric Hospitals of Hernando County, Inc., doing business as Greenbriar (Debtor). The allowance sought by Eugenia is based on 11 U.S.C. 503(b)(3) and (4), contending that Eugenia, through the efforts of its attorneys Dilworth, Paxson, Kalish & Kaufman (Dilworth) and Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A. (Carlton Fields) (collectively the Law Firms) made a substantial contribution to the Chapter 11 case of the Debtor. In addition, Eugenia contends that the services rendered by Eugenia and its attorneys were essential to the successful reorganization of the Debtor. Eugenia seeks to be reimbursed for expenditures in the sum of $110,020.74 as compensation for attorney fees and costs of the Law Firms.

In order to place the Application into proper perspective, a review of the events leading up to the ultimately successful reorganization, as appear from the record, would be helpful and is as follows:

On March 20, 1995, which was the date of the commencement of the Chapter 11 case, the Debtor was the owner and operator of a psychiatric hospital under the name of Greenbriar, located in Hernando County, Florida. On or around March 20, 1995, the Debtor owed $1,710,122.65 to Eugenia. Eugenia had no collateral and was the largest unsecured creditor of the Debtor. The Debtor also owed $1,000,000.00 to Health

Care REIT, Inc. ("REIT") which held a second mortgage on substantially all real property and personal assets of the Debtor.

The Debtor proposed several Plans of Reorganization. None of them reached confirmation. In the Plans, the Debtor treated REIT as fully secured and proposed to pay REIT the full amount of its claim with interest. In addition to its claim against the Debtor, REIT also obtained a judgment in the amount of $500,000.00 against Robert Cohen ("Cohen") in the amount of $500,000.00. At all material times Cohen was the principal of several hospitals in Pennsylvania and Florida. Between 1984 and 1985, Cohen also held the majority of the shares in Psychiatric Hospital of America, Inc., the successor in interest of E.H.I., Inc., the original owner and operator of Eugenia.

J.I.T., Inc. (J.I.T.) is a corporation formed by Cohen, who is its principal and sole shareholder. J.I.T. had no capitalization and was basically just a corporate shell. In December 1995, J.I.T., funded solely by Cohen, purchased REIT's claim against the Debtor in the amount of $1,000,000.00 and REIT's $500,000.00 judgment against Cohen for the purchase price of $750,000.00.

In July, 1996, the Debtor and J.I.T filed the Fourth Amended Plan of Reorganization. The Fourth Amended Plan provided for the payment of REIT's claim in full with interest. Eugenia filed a competing Plan or Reorganization, proposing that the REIT claim now held by J.I.T., should be equitably subordinated. On August 7, 1996, Eugenia also filed a Motion to Subordinate the REIT claim held by J.I.T. to allow claims of the general unsecured creditors.

After the parties conducted extensive discovery, this Court held a final evidentiary hearing on Eugenia's Motion to Subordinate. After the conclusion of a one-day trial, this Court took the matter under advisement and directed the parties to submit post-trial briefs.

On February 27, 1997, this Court issued its Order on Eugenia's Motion to Subordinate and ruled that the REIT claim would be allowed as secured in the amount of $250,000.00 and that the balance of $750,000.00 would be allowed as an unsecured claim subordinated to all allowed unsecured claims. Neither the Plan filed by the Debtor and J.I.T. nor the Plan filed by Eugenia obtained confirmation.

Ultimately, a Plan of Reorganization filed by the Debtor and IAMEC Funding, Inc., was confirmed. This Plan also provided for the payment of $250,000.00 on the REIT secured claim and for the equitable subordination of the balance of $750,000.00 for the REIT claim. It is without doubt that, but for the successful equitable subordination, the unsecured creditors would not have received any return on their claims.

Basically, these are the facts which are relevant to the Application under consideration. The Application is challenged by the Bank and by the Debtor. The Bank and the Debtor contend that Eugenia is not entitled to a fee award because the Law Firms did not make a substantial contribution to the case. Further, the equitable subordination litigation was in connection with Eugenia's Plan of Reorganization, which was withdrawn and never confirmed.

**General Principles Governing Allowance under 11 11 U.S.C. 503(b)(3)(4)**

**§ 503 Allowance of administrative expenses**

(b) ... there shall be allowed, administrative expenses, ...

(3) the actual, necessary expense, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by ...

a creditor, an indenture trustee, a equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a *substantial contribution* in a case under chapter 9 or 11 of this title; or

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose *expense* is allowable under paragraph (3) of this subsection, based on the time the nature, the extent, and the value of such services, and the cost of comparable services other

than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant.

The Code does not define the term "substantial contribution" but the concept is derived from the Bankruptcy Act of 1898, §§ 242 & 243 (formerly U.S.C. Sections 642 and 643). The term has been uniformly interpreted to mean a contribution to the reorganization process, which furnished tangible benefits to the bankruptcy estate in general. *See In re Granite Partners, L.P.,* 213 B.R. 440 (Bankr.S.D.N.Y.1997). Incidental benefits to the estate, standing alone, are insufficient to support a claim under this Section. *Id.* Administrative expense compensation based on a substantial benefit to a bankruptcy estate must be strictly limited to extraordinary creditor actions that lead directly to tangible benefits to the creditors, the debtor, or the estate. Compensation may be awarded only in those rare occasions when a creditor's involvement in the case truly fostered and enhanced the administration of the estate. *In re Best Products Co., Inc.* 173 B.R. 862 (Bankr.S.D.N.Y.1994).

If one were to view the facts of this case solely in the abstract and to consider only that none of the several Plans of Reorganization proposed by Eugenia achieved confirmation, the Law Firms would not be entitled to any awards under 11 U.S.C. § 503(b)(3) and (4). However, one must not lose sight of the fact, which is not in dispute, that the attorneys for Eugenia actively and successfully pursued the equitable subordination of the REIT claim and that the subordination became an important and pivotal part of the Plan ultimately confirmed. This Plan, in turn, did confer tangible real benefits not only to Eugenia, but ultimately to the general estate of the Debtor. The fact that the original million-dollar REIT claim was allowed only in the amount of $250,000.00 as a secured claim with the balance of the claim being treated as an unsecured claim saved the Debtor over $700,000.00. Moreover, the services rendered by the Law Firms were not duplicative of the services rendered by the other parties. This is due to the fact that neither the Debtor nor his attorneys took any action whatsoever to seek the equi-table subordination of the REIT claim and always attempted to treat the REIT claim as fully secured.

This being the case, it is clear and this Court is satisfied that Eugenia, in fact, made a substantial contribution to the successful reorganization of this Debtor. Further, Eugenia is entitled to receive an allowance for its attorneys, but this amount should be limited to services rendered which were directly related to the litigation of the equitable subordination of REIT's claim. No compensation shall be awarded for other services rendered by the attorneys to Eugenia in general, especially services rendered in connection with the several failed Plans of Reorganization.

Eugenia requests that its Law Firms be awarded an allowance of $89,088.75 for Dilworth's fees, $10,271.00 for Carlton Fields' fees, $9,291.69 for Dilworth's expenses and $1,369.30 for Carlton Fields' expenses for a combined total amount of $110,020.74.

After a careful and thorough review of the submissions by Dilworth and Carlton Fields for attorney fees and expenses, this Court is satisfied that reasonable compensation for Dilworth is in the amount of $65,848.75 for attorney fees and $7,375.51 for reimbursement of expenses. Reasonable compensation for Carlton Fields is in the amount of $8,431.00 for attorney fees and $1,369.30 for reimbursement of expenses. The reasonable overall reimbursement amount totals $83,024.56.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Application of Psychiatric Hospital of Pennsylvania, Inc. for Allowance of Compensation to its Attorneys Under 11 U.S.C. § 503(b)(3) and (4) be, and the same is hereby approved. A reasonable value for services rendered during the relevant time period by the Law Firm of Dilworth, Paxson, Kalish & Kaufman is hereby determined to be $65,848.75. The reasonable cost allowance for reimbursement of expenses incurred during the relevant time period by Dilworth, Paxson, Kalish & Kaufman is hereby determined to be $7,375.51. A reasonable value for services rendered during the relevant

time period by the Law Firm of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., is hereby determined to be $8,431.00. The reasonable cost allowance for reimbursement of expenses incurred during the relevant time period by Carlton fields is hereby determined to be $1,369.30. Therefore, the Applicant is entitled to an administrative expense in the amount of $83,024.56 pursuant to § 503(b) and to be paid pursuant to § 507(a) of the Bankruptcy Code. It is further

ORDERED, ADJUDGED AND DE-CREED that the Debtor's Objection to application for Allowance of Professional Fees and Expenses filed by Psychiatric Hospitals of Pennsylvania, Inc., be, and the same is hereby, overruled. It is further

ORDERED, ADJUDGED AND DE-CREED that First Union National Bank of florida's Objection to Application for allowance of Professional Fees and Expenses Filed by Psychiatric Hospitals of Pennsylvania, Inc., be, and the same is hereby, overruled.